**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TAMER ZAID,** | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| | § | **4:18-cv-01130** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **SMART FINANCIAL CREDIT** | § | |
| **UNION,** | § | |
| **Defendant.** | § | |

**<u>PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S
AMENDED MOTION TO DISMISS</u>**

TABLE OF CONTENTS

I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING .................. 1

II.  STATEMENT OF ISSUES TO BE RULED UPON ...................................................... 1

III. SUMMARY OF ARGUMENT ........................................................................................ 2

IV. ARGUMENT ..................................................................................................................... 2

 A.  Plaintiff Has Standing to Sue Defendant. .................................................................... 2

   1.   Defendant and NAFCU Fail to Recognize that a Broad View of Constitutional
   Standing Is Required by Supreme Court Controlling Precedent in Civil Rights Cases.  ... 2

   2.   Given that Plaintiff Is Eligible to Join Defendant's Credit Union, Plaintiff Can Avail
   Himself to Defendant's Facilities, Services, and Amenities. ............................................. 3

   3.   The FAC Alleges Both Past Injury and a Likelihood of Future Injury. ................... 3

 B.  Defendant's Analysis of What Constitutes a Public Accommodation Is Wrong. ......... 6

   1.   The ADA Prohibits Discrimination in the Enjoyment of Services "of" Any Place of
   Public Accommodation, Instead of "at" or "in". ............................................................... 6

   2.   The ADA Does, In Fact, Refer to a Service That Often Does Not Have a Physical
   Location. ............................................................................................................................. 7

   3.   Congress Intended the ADA to Adapt to Changes in Technology. .......................... 9

   4.   Defendant's Reliance on the ADAAA Is Misplaced. .............................................. 10

   5.   The Cases Cited by Defendant Are Distinguishable............................................... 10

     a.   *Magee v. Coca-Cola Refreshments USA, Inc.* Is Distinguishable. ..................... 10

     b.   *Weyer v. Twentieth Century Fox Film Corp.* Has Been Interpreted as Not Precluding
     ADA Website Barrier Claims. .......................................................................................... 11

     c.   *Parker v. Metropolitan Life Ins. Co.* Is Distinguishable. ................................... 12

     d.   *Ford v. Schering-Plough Corp.* Is Distinguishable. ........................................... 14

     e.   *Rendon v. Valleycrest Prods. Ltd.* Is Distinguishable. ....................................... 15

     f.   *Noah v. AOL Time Warner, Inc.* Is Distinguishable. ........................................... 16

     g.   *Carroll v. Northwest Federal Credit Union* Is Unpersuasive. ............................ 19

   6.   Defendant's Position Conflicts with the DOJ's Position. ....................................... 20

   7.   The Court Should Adopt the Interpretation of the First, Second, and Seventh Circuits,
   Which Do Not Impose a "Nexus" Theory. ...................................................................... 20

   8.   Even If This Court Imposes a "Nexus" Requirement Between Defendant's Website
   and Its Physical Facility, the Complaint Pleads a Sufficient Connection. ....................... 21

 C.  Defendant's Due Process Argument Is Without Merit. ............................................. 21

   1.   The Case Authority Cited By Defendant Is Distinguishable or Unpersuasive. ....... 25

V.  CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Access Now, Inc. v. Blue Apron, LLC*,
2017 WL 5186354 (D.N.H. Nov. 8, 2017) ...........................................................................25

*Access Now, Inc. v. Omahasteaks.com, Inc.*,
Nos. 2:16-cv-01898-AJS, 2:17-cv-00269-AJS [ECF #99] (W.D. Pa. Apr. 11,
2017) (consent decree) ...................................................................................................14, 15

*Andrews v. Blick Art Materials, LLC*,
268 F. Supp. 3d 381 (E.D.N.Y. 2017) (Weinstein, J.)...........................................9, 14, 20, 25

*Baughman v. Walt Disney World Co.*,
685 F.3d 1131 (9th Cir. 2012) ..........................................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................2

*Betancourt v. Ingram Park Mall, L.P.*,
735 F. Supp. 2d 587 (W.D. Tex. 2010)................................................................................5

*Botosan v. Paul McNally Realty*,
216 F.3d 827 (9th Cir. 2000) ...........................................................................................24

*Brintley v. Aeroquip Credit Union*,
-- F. Supp. 3d --, 2018 WL 3497139 (E.D. Mich. July 20, 2018) ...........................................3

*Brintley v. Belle River Community Credit Union*,
2018 WL 3497142 (E.D. Mich. July 20, 2018) ......................................................................3

*Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New
England, Inc.*,
37 F.3d 12 (1st Cir. 1994) ............................................................................... *passim*

*Carroll v. FedFinancial Federal Credit Union*,
-- F. Supp. 3d --, 2018 WL 3212023 (E.D. Va. June 25, 2018)............................................3, 6

*Carroll v. Northwest Federal Credit Union*,
2018 WL 2933407 (E.D. Va. Jan. 26, 2018), *appeal docketed*, No. 18-1434
(4th Cir. Apr. 19, 2018) ...............................................................................................19, 20

*Castillo v. Jo-Ann Stores, LLC*,
286 F. Supp. 3d 870 (N.D. Ohio 2018)...........................................................................13, 25

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...................................................................................................1

*Del-Orden v. Bonobos, Inc.*,
    2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ...............................................19, 25

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*,
    375 F.3d 861 (9th Cir. 2004) .........................................................................20, 23

*Doe v. Mutual of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) (Posner, C.J.) .............................................8, 9, 14, 19

*Doran v. 7-Eleven, Inc.*,
    524 F.3d 1034 (9th Cir. 2008) ...............................................................................3

*Enyart v. National Conference of Bar Examiners, Inc.*,
    630 F.3d 1153 (9th Cir. 2011) ...............................................................................9

*Ford v. Schering-Plough Corp.*,
    145 F.3d 601 (3d Cir. 1998) ............................................................................14, 16

*Fortyune v. City of Lomita*,
    766 F.3d 1098 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2888 (2015) ..............23, 24

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ...............................................................................................1

*Gathers v. 1-800-Flowers.com, Inc.*,
    2018 WL 839381 (D. Mass. Feb. 12, 2018) .........................................................25

*Gil v. Winn-Dixie Stores, Inc.*,
    242 F. Supp. 3d 1315 (S.D. Fla. 2017) ...............................................9, 14, 19, 21

*Gniewkowski v. Lettuce Entertain You Enters., Inc.*,
    251 F. Supp. 3d 908 (W.D. Pa. 2017) ..................................................................14

*Gorecki v. Dave & Buster's, Inc.*,
    2017 WL 6371367 (C.D. Cal. Oct. 10, 2017) ......................................................25

*Gorecki v. Hobby Lobby Stores, Inc.*,
    2017 WL 2957736 (C.D. Cal. June 15, 2017) ......................................................25

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) .....................................................................3, 4, 5

*Langley v. Northstar Location Services, LLC*,
    2016 WL 4059355 (S.D. Tex. July 28, 2016) (Lake, J.) ....................................1, 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).......................................................................................1, 4

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2012) .....................................................................20, 23

*Magee v. Coca-Cola Refreshments USA, Inc.*,
    833 F.3d 530 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017)................... *passim*

*Markett v. Five Guys Enterprises LLC*,
    2017 WL 5054568 (S.D.N.Y. July 21, 2017) ...........................................9, 14, 19

*Miller v. Cal. Speedway Corp.*,
    536 F.3d 1020 (9th Cir. 2008) ...........................................................................23

*Molski v. M.J. Cable, Inc.*,
    481 F.3d 724 (9th Cir. 2007) ...............................................................................3

*Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. and Am. Fed'n of
    Grain Millers, AFL-CIO-CLC*,
    268 F.3d 456 (7th Cir. 2001) (Posner, J.) ................................................8, 9, 14, 19

*Nanni v. Aberdeen Marketplace, Inc.*,
    878 F.3d 447 (4th Cir. 2017) ...............................................................................6

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
    2016 WL 3561622 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) .........................8

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
    Case 3:15-cv-30023-MGM, 2016 WL 6540446 (D. Mass. Nov. 3, 2016)
    (Mastroianni, J.) ...................................................................................................8

*Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*,
    2016 WL 3561631 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) .........................8

*Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*,
    2016 WL 6652471 (D. Mass. Nov. 4, 2016) (Mastroianni, J.) ..............................8

*National Ass'n of the Deaf v. Netflix, Inc.*,
    869 F. Supp. 2d 196 (D. Mass. 2012) ......................................................... *passim*

*National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*,
    No. 1:13-cv-10799-GAO [ECF #60 at pg. 5] (D. Mass. Mar. 24, 2014) ..............24

*National Fed. of the Blind v. Scribd Inc.*,
    97 F. Supp. 3d 565 (D. Vt. 2015).............................................................. *passim*

*National Fed. of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006) ................................................................6, 12, 20, 21

*Noah v. AOL Time Warner, Inc.*,
261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd sub nom.*, 2004 WL 602711 (4th
Cir. Mar. 24, 2004) (unpublished table decision) ........................................................ *passim*

*O'Shea v. Littleton*,
414 U.S. 488 (1974)................................................................................................................4, 5

*Pallozzi v. Allstate Life Ins. Co.*,
198 F.3d 28 (2d Cir. 1999)................................................................................................8, 9, 14

*Parker v. Metropolitan Life Ins. Co.*,
121 F.3d 1006 (6th Cir. 1997) (en banc) .........................................................12, 13, 14, 16

*Reed v. CVS Pharmacy, Inc.*,
2017 WL 4457508 (C.D. Cal. Oct. 3, 2017)........................................................................25

*Rendon v. Valleycrest Prods., Ltd.*,
294 F.3d 1279 (11th Cir. 2002) .............................................................................................15, 16

*Rios v. New York & Co., Inc.*,
2017 WL 5564530 (C.D. Cal. Nov. 16, 2017)......................................................................25

*Robles v. Dominos Pizza, LLC*,
2017 WL 1330216 (C.D. Cal. Mar. 20, 2017), *appeal docketed*, No. 17-55504
(9th Cir. Apr. 13, 2017) ..........................................................................................................25

*Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*,
2018 WL 566781 (C.D. Cal. Jan. 24, 2018) ........................................................................25

*Shaver v. Independent Stave Co.*,
350 F.3d 716 (8th Cir. 2003) ..................................................................................................3

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..............................................................................................................1

*Straw v. American Bar Ass'n*,
2015 WL 602836 (N.D. Ill. Feb. 11, 2015) (Ex. 10) .........................................................9

*Trafficante v. Metro. Life Ins. Co.*,
409 U.S. 205 (1972)..................................................................................................................3

*Webster v. Fall*,
266 U.S. 507 (1925)..............................................................................................................11, 18

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) ...................................................................... *passim*

**Federal Statutes**

42 U.S.C.
    § 2000a.........................................................................................16, 17, 18, 23
    § 2000a(b)(1)-(3) ..............................................................................................17
    § 2000a(b)(3) .....................................................................................................17
    § 2000a(b)(4) .....................................................................................................17
    § 12181(7) ................................................................................................. *passim*
    § 12181(7)(E).....................................................................................................11
    § 12181(7)(F)..........................................................................................7, 11, 19
    § 12182(a) ................................................................................................. *passim*
    § 12182(b)(2)(A)(ii)...........................................................................................22
    § 12182(b)(2)(A)(iii)..........................................................................................22

Americans with Disabilities Act .................................................................... *passim*

ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat 3553 (Sept. 25, 2008)
    (Ex. 13) ............................................................................................................10

Title III  of the ADA .................................................................................... *passim*

Civil Rights Act of 1964 ..................................................................................17

**Federal Regulations**

28 C.F.R. § 36.201(a)........................................................................................22

28 C.F.R. § 36.303(a)........................................................................................22

28 C.F.R. § 36.303(b) ........................................................................................22

28 C.F.R. § 36.303(b)(2)....................................................................................22

28 C.F.R. § 36.303(c)(1)....................................................................................22

28 C.F.R. § 36.303(c)(1)(ii)...............................................................................22

Final Rule Nondiscrimination on the Basis of Disability by Public
    Accommodations and in Commercial Facilities, 56 Fed. Register 35544-01, ,
    35555, 35565, 35566, 1991 WL 304374 (July 26, 1991) .................................10, 22

**Federal Rules**

Rule 12(b)(6)......................................................................................................2

**Other Authorities**

2010 Advance Notice of Public Rulemaking ("ANPRM"), 75 Fed. Reg. 43460
    (July 26, 2010) ..............................................................................................23

*Applicability of the Americans with Disabilities Act (ADA) to Private Internet
    Sites: Hearing Before the House Subcommittee on the Constitution of the
    House Committee on the Judiciary*, 106th Cong., 2d Sess., 065-010 (2000) ........................23

H.R. Rep. 101-485(II), (1990) ...................................................................................9

Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept.
    9, 1996) ........................................................................................................22

News Release (testimony of Principal Deputy Assistant Attorney General for
    Civil Rights, Samuel R. Bagenstos, before the House Subcommittee on
    Constitution, Civil Rights and Civil Liberties), 2010 WL 1634981 (Apr. 22,
    2010) .............................................................................................................23

WCAG 2.0 ..............................................................................................................23

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

On July 26, 2017, Defendant filed an Amended Motion to Dismiss against the First Amended Complaint ("FAC"), which is now the operative pleading.

**II.     STATEMENT OF ISSUES TO BE RULED UPON**

The first question to be ruled upon by the Court is whether the Court has constitutional standing over this action.  The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  A plaintiff must demonstrate that he suffers the threat of an "injury in fact" that is concrete and particularized; the threat must be actual or imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  When an injunction is sought, the moving party must also show a continuing threat of injury.  *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) ("Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury . . . .").

The second question to be ruled upon by the Court is whether the FAC sufficiently alleges the element of "place of public accommodation" set forth in 42 U.S.C. § 12182(a) and as defined in 42 U.S.C. § 12181(7).  The third question to be ruled upon by the Court is whether this action violates Defendant's procedural right to due process.  "The court must accept the factual allegations of the complaint as true and view them in a light most favorable to the plaintiff." *Langley v. Northstar Location Services, LLC*, 2016 WL 4059355, at *2 (S.D. Tex.

July 28, 2016) (Lake, J.) (Ex. 1).  "To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007).

## III.     SUMMARY OF ARGUMENT

As clarified in the FAC, Tamer Zaid ("Plaintiff") is a resident of Harris County, Texas, (FAC ¶ 4), and so he is eligible for membership within Defendant's credit union.  Thus, Defendant's argument that Plaintiff lacks constitutional standing to sue is without merit. Defendant's argument that a Title III ADA claim cannot be predicated upon the existence of communication barriers on a commercial website because of the failure to satisfy the element of "place of public accommodation" in 42 U.S.C. §§ 12181(7) and 12182(a) is wrong.  Numerous federal courts have rejected Defendant's cramped position, which fails to broadly construe the ADA as required.  Congress intended the ADA to keep pace with changes in technology. Finally, Defendant's argument that Plaintiff's ADA claim deprives it of procedural due process has been rejected by numerous federal courts, and it contradicts the position of the United States Department of Justice ("DOJ"), which is entitled to deference.

## IV.     ARGUMENT

### A.     Plaintiff Has Standing to Sue Defendant.

#### 1.     Defendant and NAFCU Fail to Recognize that a Broad View of Constitutional Standing Is Required by Supreme Court Controlling Precedent in Civil Rights Cases.

Defendant and NAFCU fail to recognize that a broad view of constitutional standing is mandated by Supreme Court binding precedent in this civil rights action.  "The Supreme Court has instructed [courts] to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of

obtaining compliance with the Act.'" *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039-40 (9th Cir. 2008) (citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)); *Brintley v. Aeroquip Credit Union*, -- F. Supp. 3d --, 2018 WL 3497139, at *2 (E.D. Mich. July 20, 2018) (Ex. 2); *Brintley v. Belle River Community Credit Union*, 2018 WL 3497142, at *2 (E.D. Mich. July 20, 2018) (Ex. 3).

> **2.     Given that Plaintiff Is Eligible to Join Defendant's Credit Union, Plaintiff Can Avail Himself to Defendant's Facilities, Services, and Amenities.**

As clarified in the FAC, Plaintiff is eligible to join Defendant's credit union as a resident of Harris County.[1]  (FAC ¶ 4.)  This is highly significant.  *See Carroll v. FedFinancial Federal Credit Union*,-- F. Supp. 3d --, 2018 WL 3212023, at *1 n.1 (E.D. Va. June 25, 2018) (Ex. 4) (holding that blind ADA plaintiff had standing to sue credit union because plaintiff had alleged that he could be member of defendant's credit union) ("Plaintiff has the ability to become a member, and he therefore plausibly alleges harm arising from his inability to access information about Defendant's services and branch location.").

> **3.     The FAC Alleges Both Past Injury and a Likelihood of Future Injury.**

The FAC sufficiently alleges both past concrete injury[2] and a likelihood of future injury. With respect to future harm, Defendant fails to recognize that the mere fact that a plaintiff is an

---

[1] Defendant ignores Plaintiff's *Amended* Civil Cover Sheet.  (Dkt. 12-1.)

[2] Plaintiff has suffered an intangible injury to his dignitary interest.  "[T]he mere fact of discrimination offends the dignitary interest that the statute[ is] designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs." *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th Cir. 2003) (stating that "[the] language [of the ADA] suggests that Congress was trying to protect a dignitary interest with the ADA"); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 733 (9th Cir. 2007) ("One need not be a client or customer of a public accommodation to feel the sting of its discrimination.").  The ADA confers *substantive* rights to be free from disability discrimination instead of mere procedural rights. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013) ("The *substantive* right conferred by [the ADA] statute is to be free from disability discrimination in the enjoyment of the facility, regardless of [plaintiff's] motive for visiting the facility.") (emphasis added).

ADA tester does not preclude such plaintiff from demonstrating a "real and immediate" threat of future harm, which is necessary to obtain standing to sue to recover injunctive relief. Defendant fails to appreciate the important guidance on this precise issue provided by the Eleventh Circuit's *Houston* decision.[3] On the issue regarding the threat of *future* injury, *Houston* relied on: (1) the plaintiff's ADA testing as a factor weighing in favor of the likelihood of his return to the location of the ADA violation for another test,[4] 733 F.3d at 1340; (2) the plaintiff's exposure to illegal conduct in the past,[5] *id.* at 1336; (3) the lack of remediation of the barriers, *id.* at 1337;[6] and (4) the fact that the plaintiff's likelihood of suffering future injury was not contingent upon speculative events or events that were beyond the plaintiff's control.[7] *Id.*

The FAC in the instant action alleges that: (1) several times in the "recent months" preceding the filing of Plaintiff's action on April 10, 2018, Plaintiff attempted to use and navigate Defendant's website, but encountered communication barriers on Defendant's website "multiple times," (FAC ¶¶ 5, 17); (2) barriers continue to exist on Defendant's website even after Defendant was notified by Plaintiff about the existence of the barriers, (FAC ¶ 22); and (3)

---

[3] *Houston* addressed two distinct issues. "This appeal presents two issues: (1) whether Plaintiff Houston's tester motive behind his past and future visits precludes his having standing for this particular lawsuit under Title III of the ADA, and (2), if not, whether under the totality of the facts here Houston has shown a real and immediate threat of future injury." *Houston*, 733 F.3d at 1329.

[4] "Given that ADA testing appears to be Houston's avocation or at least what he does on a daily basis, the likelihood of his return for another test of the Presidente Supermarket . . . is considerably greater than the *Lujan* plaintiffs' return to far away countries with unstable political situations." *Houston*, 733 F.3d at 1340.

[5] *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) ("Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.").

[6] *Houston*, 733 F.3d at 1337 ("[T]here is a 100 percent likelihood that Plaintiff Houston will suffer the alleged injury again when he returns to the store.").

[7] "The likelihood of Houston suffering future injury thus is not contingent upon events that are speculative or beyond his control. Rather, the cause of the injury continues to exist, and ***the likelihood of Houston encountering that cause in the future depends only on Houston's own volition***." 733 F.3d at 1337 (emphasis added).

Plaintiff intends to use Defendant's website if it became accessible, (FAC ¶ 16).  In addition, it is beyond dispute that Plaintiff has acted as a "tester" of Defendant's website.  Indeed, Defendant freely brought to the Court's attention that Plaintiff has filed similar ADA lawsuits against other defendants.  (Mtn. Dism. at 8 n.2.)

"[I]n an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the [location containing the discriminatory barriers] once it is made compliant." *Betancourt v. Ingram Park Mall, L.P.*, 735 F. Supp. 2d 587, 604 (W.D. Tex. 2010). The FAC here sufficiently pleads these requirements.  (FAC ¶¶ 5, 13-17, 21-22.)  Thus, the FAC sufficiently pleads a threat of future injury that is "real and immediate."  *Houston*, 733 F.3d at 1337.

As Defendant correctly notes, "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, ***if unaccompanied by any continuing, present adverse effects***." *O'Shea*, 414 U.S. at 495-96 (emphasis added).  The FAC at issue here alleges that Plaintiff has been deterred by the ongoing discriminatory barriers that continue to exist on Defendant's website.  (FAC ¶¶ 16-17, 21-22.)  Thus, the FAC sufficiently pleads a threat of future injury that is "real and immediate."  *Houston*, 733 F.3d at 1337.

Finally, Defendant's reliance upon case law requiring that the ADA plaintiff intend to return to the defendant's brick-and-mortar location is misplaced.  Defendant relies on decisions that stand for the proposition that proximity to the physical brick-and-mortar facility at issue is relevant in an ADA case in which ***architectural barriers*** are at issue.  (Mtn. Dism. at 16.)  Such reliance is misplaced as such decisions did not involve alleged digital barriers on an inaccessible commercial website impairing effective communication.  Plaintiff is aware of no legal authority

holding that a plaintiff's standing to pursue a Title III ADA claim hinges upon his intent to return to some place other than where the asserted violation occurred. Yet, that is precisely the argument Defendant seeks to interpose here. A complaint must assert facts from which the court may infer the plaintiff will encounter the alleged accessibility barriers in the future. This requires a plaintiff to assert he will return *to the place where the barriers presently exist*, or he would return to that place but for its accessibility barriers. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017) (holding that the Fourth Circuit's principle "that when an ADA plaintiff has alleged a past injury *at a particular location*, his plausible intentions to thereafter return *to that location* are sufficient to demonstrate the likelihood of future injury" "is entirely consistent with the decisions of [other] courts of appeals") (emphasis added).

**B.    Defendant's Analysis of What Constitutes a Public Accommodation Is Wrong.**

**1.    The ADA Prohibits Discrimination in the Enjoyment of Services "of" Any Place of Public Accommodation, Instead of "at" or "in".**

In regards to 42 U.S.C. § 12182(a), Defendant argues that a website is not a "place of public accommodation." (Mtn. Dism. at 5.) Under the plain language of the ADA's general nondiscrimination statute, however, the ADA applies to discrimination in the services, privileges, advantages, or accommodations "of" a place of public accommodation, rather than being limited to those services, privileges, advantages, or accommodations provided "at" or "in" a place of public accommodation. *See FedFinancial*, 2018 WL 3212023, at *4-*6; *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 201 (D. Mass. 2012) ("The ADA covers the services 'of' a public accommodation, not services 'at' or 'in' a public accommodation."); *National Fed. of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) ("The statute applies to the *services of* a place of public accommodation, not services in a place of

public accommodation.   To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute.") (emphasis added).   In particular, the ADA statute provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of ***the goods, services, facilities, privileges, advantages, or accommodations of*** any place of public accommodation by any person who owns, leases (or leases to) or operates a place of public accommodation."  42 U.S.C. § 12182(a) (emphasis added).  It is beyond dispute that Defendant's credit union location qualifies as a "place of public accommodation."

### 2.    The ADA Does, In Fact, Refer to a Service That Often Does Not Have a Physical Location.

Defendant argues that the "statute [in 42 U.S.C. § 12181(7)] does not list anything that is not a brick-and-mortar, physical <u>place</u>."  (Mtn. Dism. at 6.)  Not so.  The list of almost 70 places includes "travel service," or other "service establishment."   42 U.S.C. § 12181(7)(F).   In *Carparts Distribution Ctr., Inc. v. Automotive Wholesalers Assoc. of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994), the First Circuit held as follows:

> "By including "travel service" among the list of services considered "public accommodations," ***Congress clearly contemplated that "service establishments" include providers of services which do not require a person to physically enter an actual physical structure.***   Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services.   Likewise, one can easily imagine the existence of other service establishments conducting business by mail and phone without providing facilities for their customers to enter in order to utilize their services.   ***It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not.  Congress could not have intended such an absurd result.***
> . . .
> Neither Title III nor its implementing regulations make any mention of physical boundaries or physical entry.  Many goods and services are sold over the telephone or by mail with customers never physically entering the premises of a commercial entity to purchase the goods or services.  To exclude this broad category of businesses from the reach of Title III and limit the application of Title III to physical structures which persons

must enter to obtain goods and services would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public."

*Carparts*, 37 F.3d at 19-20 (emphasis added).[8]  The Second Circuit and the Seventh Circuit have both followed the First Circuit.  *See Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (Posner, C.J.) (citing *Carparts* with approval and noting that a "place of public accommodation" encompasses facilities open to the public in both physical and electronic space, including websites); *Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. and Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) (Posner, J.) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or hotel but we have already rejected that interpretation.") (citing *Doe* and *Carparts*) ("The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services.  What matters is that the good or service be offered to the public."); *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32 (2d Cir. 1999) (citing *Carparts* with approval) ("Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods, [and] services. . . of any place of public accommodation,' [42 U.S.C. § 12182(a)], suggests to us that

---

[8] Within the First Circuit, *Carparts* has been applied in cases in which the accessibility of websites was directly at issue.  *See, e.g.*, *Nat'l Ass'n of the Deaf v. Harvard Univ.*, 2016 WL 3561622, at *4 n.5 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) ("*Carparts* is binding precedent in this Circuit.") (Ex. 5), *adopted in Nat'l Ass'n of the Deaf v. Harvard Univ.*, Case 3:15-cv-30023-MGM, 2016 WL 6540446, at *3 (D. Mass. Nov. 3, 2016) (Mastroianni, J.) (Ex. 6); *Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, 2016 WL 3561631, at *1 (D. Mass. Feb. 9, 2016) (Robertson, Mag. J.) (recommending the denial of a motion to dismiss or stay based upon the reasons set forth in the report and recommendation in *Harvard Univ.*) (Ex. 7), *adopted in Nat'l Ass'n of the Deaf v. Massachusetts Inst. of Tech.*, 2016 WL 6652471, at *1 (D. Mass. Nov. 4, 2016) (Mastroianni, J.) (Ex. 8); *Netflix, Inc.*, 869 F. Supp. 2d at 200 (denying motion for judgment on the pleadings and holding website constituted place of public accommodation) (extending reasoning of *Carparts* to reject defendant's argument that Title III does not apply to websites generally or to defendant's "Watch Instantly" service on its website in particular).

the statute was meant to guarantee them more than mere physical access.").[9]  Notably, Defendant

omits addressing *Carparts*, *Doe*, *Morgan*, and *Pallozzi*.

### 3. Congress Intended the ADA to Adapt to Changes in Technology.

Contrary to Defendant's argument, the fact that the term "website" does not appear

within the 12 categories of "public accommodations," (Mtn. Dism. at 6), is of no matter.  As one

federal court explained, "the legislative history of the ADA makes clear that Congress intended

the ADA to adapt to changes in technology."  *Netflix, Inc.*, 869 F. Supp. 2d at 200-01 (quoting

H.R. Rep. 101-485(II), at 108 (1990) (Ex. 11)) ("the Committee intends that the types of

accommodation and services provided to individuals with disabilities, under all of the titles of

this bill, should keep pace with the rapidly changing technology of the times."); *Enyart v.*

_____

[9] *See, e.g.*, *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 390 (E.D.N.Y. 2017)
(Weinstein, J.) ("[The Courts of Appeals for the First and Seventh Circuits, while also holding
that the ADA is unambiguous, reach the conclusion that "places of public accommodation" need
not be physical structures, and discrimination may occur when the goods or services of a "place
of public accommodation" are enjoyed by customers who never visit a physical location. These
courts have primarily relied on the use of the word "of"—as compared to "at" or "in"—in 42
U.S.C. § 12182(a), and ***the inclusion of "travel service" in the statute's list of public
accommodations, a type of business at the time of the statute's passage that often did not have
a physical location***.") (emphasis added); *id.* at 392 (citing *Pallozzi* for the proposition that "[t]he
Second Circuit Court of Appeals emphasized *that it is the sale of goods and services to the
public, rather than how and where that sale is executed, that is crucial* when determining if the
protections of the ADA are applicable.") (emphasis in original); *see also Magee v. Coca-Cola
Refreshments USA, Inc.*, 833 F.3d 530, 534 n.23 (5th Cir. 2016) (recognizing that "the
precedents of the First, Second, and Seventh Circuits . . . have interpreted the term 'public
accommodation' to extend beyond physical places"), *cert. denied*, 138 S. Ct. 55 (2017); *Markett
v. Five Guys Enterprises LLC*, 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017) (Ex. 9) ("the
text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggest that
defendant's website is covered under the ADA . . . as its own place of public accommodation");
*Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1318 (S.D. Fla. 2017) ("Courts in the First,
Second, and Seventh Circuits have found that the ADA can apply to a website independent of
any connection between the website and a physical place.") (citing cases); *National Fed. of the
Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 570 (D. Vt. 2015) ("two Seventh Circuit cases confirm
[the First Circuit's] view that the ADA applies to more than physical spaces") (citing *Doe* and
*Morgan*); *Straw v. American Bar Ass'n*, 2015 WL 602836, at *6 (N.D. Ill. Feb. 11, 2015) (Ex.
10) (citing with approval *Morgan*).

*National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011) ("[A]ssistive technology is not frozen in time: as technology advances, ... accommodations should advance as well."); Final Rule:  Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Register 35544-01, 35566, 1991 WL 304374 (July 26, 1991) (Ex. 12) (stating in the DOJ's preamble to 1991 Title III regulations that regulations should be interpreted to keep pace with "emerging technology").  "New technology presents risks as well as opportunities; we must now allow fear of the former to deprive us of the latter." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1137 (9th Cir. 2012) (reversing district court's granting of defendant's motion for summary judgment in ADA case seeking modification of policy prohibiting use of Segway at Disneyland).

### 4.       Defendant's Reliance on the ADAAA Is Misplaced.

Defendant contends that "the ADA has been extensively amended over the years," but that Congress has chosen not to "add websites to the list of places of public accommodation." (Mtn. Dism. at 6.)  As explained by the DOJ, however:

> "In reality, the ADA has been amended by Congress only once, in 2008, through the ADA Amendments Act ("ADAAA"), Pub. L. 110-325 (Sept. 25, 2008).  The purpose of the ADAAA was to clarify Congress' intent to broadly cover individuals with disabilities, and to supercede court decisions that had too narrowly interpreted the ADA's disability definition.  ADAAA, Sec. 2 Findings and Purposes.  *It is unreasonable to draw any conclusion about whether a web-based service is or is not a public accommodation from the enactment of the ADAAA*."

(Request for Jud. Notice ("RJN") Ex. 1 at 12 n.5) (emphasis added); ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat 3553 (Sept. 25, 2008) (Ex. 13).

### 5.       The Cases Cited by Defendant Are Distinguishable.

#### a.       *Magee v. Coca-Cola Refreshments USA, Inc.* Is Distinguishable.

Defendant's reliance on *Magee* is misplaced as that decision is distinguishable.   In

*Magee*, the plaintiff, relying exclusively on 42 U.S.C. § 12181(7)(E), argued on appeal that Coca-Cola's vending machines are "sales establishments" and, in turn, "places of public accommodation."   833 F.3d at 532 n.8.   The Fifth Circuit disagreed.  *Magee* merely held that "Coca-Cola's vending machines are not 'sales establishments' under plain meaning of that term and therefore are not 'places of public accommodation' under Title III of the ADA."  *Id.* at 535. In particular, *Magee* analyzed the term "sales establishments" under 42 U.S.C. § 12181(7)(E).

In contrast, Plaintiff, here, is not seeking to invoke "sales establishments" under 42 U.S.C. § 12181(7)(E) as applicable.   Rather, Plaintiff is relying upon the inclusion of the term "travel service," or other "service establishment" in 42 U.S.C. § 12181(7)(F).

Moreover, *Magee* did not address alleged communication barriers existing in cyberspace within a commercial website.   Cases are not precedents for propositions that are not considered.  *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court ***nor ruled upon***, are not to be considered as having been so decided as to constitute precedents.") (emphasis added).

Indeed, if anything, *Magee* should be construed in favor of Plaintiff's position because the Fifth Circuit interpreted the DOJ's implementing regulation as defining "place of public accommodation" as "substantially similar to" those provided by 42 U.S.C. § 12181(7).[10]  *Magee*, 533 F.3d at 533.   *Magee* also pointed out that 42 U.S.C. § 12181(7)'s categories "should be construed liberally" consistent with the ADA's statutory history.  *Magee*, 533 F.3d at 535.

> **b.      *Weyer v. Twentieth Century Fox Film Corp.* Has Been
>           Interpreted as Not Precluding ADA Website Barrier Claims.**

Defendant's reliance on *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104,

---

[10] Thus, the Fifth Circuit has contradicted Defendant's contention that the 12 categories are "comprehensive," (Mtn. Dism. at 5).

1114 (9th Cir. 2000), is misplaced.  In *Weyer*, the Ninth Circuit interpreted the ADA in the context of insurance policies (not the accessibility of a commercial website) as indicating that "some connection between the good or service complained of and an actual physical place is required." *Id.* at 1114.  Subsequent courts have construed *Weyer* "to require a 'nexus' between the challenged service and the premises of the public accommodation." *Scribd*, 97 F. Supp. 3d at 569; *Target*, 452 F. Supp. 2d at 952-55.  Notably, in *Target*, the district court flatly rejected the defendants' argument that the plaintiffs' claim requires the "off-site" discrimination to deny physical access to the defendant's brick-and-mortar stores in order to be actionable under the ADA. *Id.* at 953.  The *Target* court held:

> "According to defendants, in order for plaintiffs' claim to be actionable under the ADA, the 'off-site' discrimination must still deny physical access to Target's brick-and-mortar stores. . . . [D]efendant argues that the nexus theory applies only to the denial of physical access to a place of public accommodation, and thus plaintiffs' claim that Target.com (rather than Target stores) is inaccessible, is not legally cognizable. However, consistent with the plain language of the statute, ***no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation***.  Further, ***it is clear that the purpose of the statute is broader than mere physical access***-seeking to bar actions or omissions which impair a disabled person's 'full enjoyment' of services or goods of a covered accommodation. 42 U.S.C. § 12182(a)."

*Target*, 452 F. Supp. 2d at 953-54 (emphasis added).[11]  Subsequent to the ground-breaking decision in *Target*, numerous decisions now exist within the Ninth Circuit in which website barrier cases have withstood motions to dismiss despite *Weyer*.  (*See* FAC ¶ 12.)

### c.      *Parker v. Metropolitan Life Ins. Co.* **Is Distinguishable.**

Defendant's reliance upon *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) (en banc), is misplaced.  First, the majority opinion in *Parker* did not address an ADA

---

[11] Defendant's reliance on *Target*, (Mtn. Dism. at 9), is remarkable given that *Target* expressly rejected the same argument now raised by Defendant here, which is that a website barrier must impede physical access to a physical place in order to be actionable.

claim involving the accessibility of a commercial website.  Rather, it addressed "a benefit plan"
offered by an employer.  *Id.* at 1010.  After all, it was decided over two decades ago.  Thus,
*Parker* did not have an opportunity to consider the multitude of subsequent decisions issued
nationwide recognizing the viability of website-based ADA claims, (*see* FAC ¶ 12) (citing
cases), nor the DOJ's guidance on such topic.[12]   Second, footnote 3 of the *Parker* decision
explains the narrowness of its holding by stating:

> "We have expressed no opinion as to whether a plaintiff must physically enter a public
> accommodation to bring suit under Title III as opposed to merely accessing, by some
> other means, a service or good provided by a public accommodation."

*Parker*, 121 F.3d at 1011 n.3.  Notably, Defendant conveniently omits to mention that in *Castillo
v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870 (N.D. Ohio 2018), the court expressly relied upon
footnote 3 of *Parker* in holding that the *Parker* majority "expressly left open the issue raised by
this case," *i.e.*, whether there is an absolute bar to any claim under Title III of the ADA
pertaining to a website.  286 F. Supp. 3d at 876.  Third, *Parker* held that "the good that plaintiff
seeks is not offered by a place of public accommodation."  *Id.* at 1011.  The majority opinion
held:

> "[Plaintiff] did not access her policy from [defendant's] insurance office.  Rather, she
> obtained her benefits through her employer.  There is, thus, no ***nexus*** which [defendant]
> offers to the public from its insurance office."

*Id.* at 1011 (emphasis added).  Thus, if anything, the majority opinion in *Parker* arguably applied
a "nexus" theory as does the Ninth Circuit,[13] but unlike the First, Second, and Seventh Circuits,

---

[12] *See infra* at Argument section IV.B.6.
[13] *See Weyer*, 198 F.3d at 1114 (interpreting the ADA as indicating that "some connection
between the good or service complained of and an actual physical place is required.").  Notably,
*Parker* was decided before *Weyer*, and so the majority opinion in *Parker* had no opportunity to
consider *Weyer*.

which impose no such requirement.[14]

### d.    *Ford v. Schering-Plough Corp.* **Is Distinguishable.**

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998), is distinguishable.   In

*Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017), the

court considered the applicability of the Sixth Circuit's decision in *Parker* insofar as the Third

Circuit had previously cited to and relied upon *Parker* in *Ford*, 145 F.3d at 612-14; *id.* at 613-14

("[B]y aligning ourselves with the Sixth Circuit's *Parker* decision regarding the definition of

'public accommodation[,] we part company with the First Circuit in this regard."); *Gniewkowski*,

251 F. Supp. 3d at 916-17.  The district court in *Gniewkowski*, however, expressly distinguished

*Ford* because the alleged discrimination in *Ford* "occurred at a location where . . . the insurance

carrier in *Ford* . . . [did not] ha[ve] ownership or possession, or exercised

control." *Gniewkowski*, 251 F. Supp. 3d at 918.  The district court added, "Conversely, in the

instant matter, the alleged discrimination <u>has</u> taken place on property that [defendant] owns,

operates and controls—the [defendant's] website." *Id.* (emphasis in original).  Thus,

*Gniewkowski* indicates that *Ford* was treated as setting forth the applicable binding circuit

precedent for the Third Circuit for almost two decades as to the definition of public

accommodation before it was ultimately distinguished on its facts in *Gniewkowski*.[15]

---

[14] *See, e.g.*, *Carparts*, 37 F.3d at 18-19; *Doe*, 179 F.3d at 559; *Morgan*, 268 F.3d at 459; *Pallozzi*, 198 F.3d at 32-33; *Andrews*, 268 F. Supp. 3d at 393 ("This district court, as it must, adopts the Second Circuit's sensible approach to the ADA.  It is unambiguous that under Title III of the ADA, dickblick.com is a place of public accommodation."); *Markett*, 2017 WL 5054568, at *2; *Scribd*, 97 F. Supp. 3d at 566-76 (denying motion to dismiss ADA claim brought against operator of commercial website that did not operate any physical location open to public); *see also Gil*, 242 F. Supp. 3d at 1318 ("Courts in the First, Second, and Seventh Circuits have found that the ADA can apply to a website independent of any connection between the website and a physical place.") (citing cases); *Netflix*, 869 F. Supp. 2d at 200.
[15] If the Third Circuit bars website cases, then why are the district courts therein allowing such cases to proceed?  *See, e.g., Gniewkowski, supra*; *Access Now, Inc. v. Omahasteaks.com, Inc.*,

e.    *Rendon v. Valleycrest Prods. Ltd.* **Is Distinguishable.**

Defendant's reliance upon the Eleventh Circuit's decision in *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279 (11th Cir. 2002), is misplaced.  First, the question decided in that particular case was narrow.  In *Rendon*, the plaintiffs, who had hearing and upper-body mobility impairments, sought selection to compete on the quiz show, "Who Wants to Be a Millionaire?," by calling an automated hotline for contestants.  The plaintiffs could not register their entries either because they were deaf and could not hear the questions on the automated hotline, or because they could not move their fingers rapidly enough to record their answers on their telephone key pads.  The Eleventh Circuit stated that "this appeal involves ***only*** the question of whether Title III encompasses a claim involving telephonic procedures that . . . tend to screen out disabled persons from participation in a competition held in a tangible public accommodation." 294 F.3d at 1282.  Thus, the Eleventh Circuit had no occasion to decide whether Title III encompasses a claim involving the accessibility of a commercial website.

Even so, the Eleventh Circuit decision is noteworthy because it rejected the defendant's very narrow interpretation.  The defendants interpreted Title III as limited to discrimination comprised of only physical and architectural barriers.  *Id.* at 1283.  The Eleventh Circuit made it clear that discrimination extends to "intangible barriers."  *Id.*  In fact, the Eleventh Circuit noted, "The statute also recognizes that an intangible barrier may result as a consequence of a defendant entity's failure to act, that is, when it refuses to provide a reasonable ***auxiliary service*** that would permit the disabled to gain access to or use its goods and services."  *Id.* at 1283 n.7 (emphasis

---

Nos. 2:16-cv-01898-AJS, 2:17-cv-00269-AJS [ECF #99] (W.D. Pa. Apr. 11, 2017) (consent decree) (Ex. 14); *Frazier v. Cogo's, Co.*, Nos. 2:16-cv-01898-AJS, 2:17-cv-00091-AJS [ECF #171] (W.D. Pa. June 27, 2017) (consent decree) (Ex. 15); *Frazier v. E.L.I. Trading, Inc.*, Nos. 2:16-cv-01898-AJS, 2:17-cv-00024-AJS [ECF #191] (W.D. Pa. Jan. 11, 2018) (order granting motion for preliminary injunction) (Ex. 16).

added).   The Eleventh Circuit held, "Defendants urge us to hold, in effect, that so long as discrimination occurs off site, it does not offend Title III.  We do not believe this is a tenable reading of Title III[.]"   *Id.* at 1285.   The Eleventh Circuit noted that in the ADA's findings of fact, that ***communication barriers*** are amongst the precise types of discrimination that the statute seeks to redress.   *Id.* at 1286.   Although the defendants in *Rendon* sought to rely upon the circuit court decisions of the Third, Sixth, and Ninth Circuit, *i.e.*, *Ford*, *Parker*, and *Weyer*, the Eleventh Circuit held that such disability discrimination cases were factually dissimilar because the plaintiffs therein "sued insurance companies alleging discrimination in the insurance policy coverage provided through the plaintiffs' employers and not directly through the insurance company."   *Id.* at 1284 n.8.   Finally, the Eleventh Circuit did ***not*** decide whether to impose a nexus requirement.   It merely noted that even if a nexus was required, such nexus existed under the particular alleged facts at issue.[16]

### f.    *Noah v. AOL Time Warner, Inc.* Is Distinguishable.

Defendant's reliance on *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd sub nom.*, 2004 WL 602711 (4th Cir. Mar. 24, 2004) (unpublished decision) (Ex. 8), is misplaced.   The plaintiff in *Noah* sued his Internet service provider ("ISP") for religious discrimination in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a,[17] based

---

[16] In referencing *Ford*, *Parker*, and *Weyer*, the Eleventh Circuit stated, "they do not stand for the broad proposition that a place of public accommodation may exclude persons with disabilities from services or privileges performed within the premises of the public accommodation so long as the discrimination itself occurs off site or over the telephone.  At most, they can be read to require a ***nexus*** between the challenged service and the premises of the public accommodation. That nexus is surely present here; Plaintiffs seek access to privileges provided in Defendants' theater."   *Id.* at 1284 n.8 (emphasis added).

[17] The plaintiff in *Noah* did not sue the defendants under Title II of the ADA, 42 U.S.C. §§ 12131-12165.   *See Noah*, 261 F. Supp. 2d at 534, 536.   Thus, *Noah*'s holding that the ISP's chat room did not qualify as a place of public accommodation was explicitly confined to Title II of the Civil Rights Act.

upon the allegation that his ISP refused to intervene to stop harassing statements against the

plaintiff's Islamic religion in the ISP's online chat rooms.  *Noah*, 261 F. Supp. 2d at 534, 536.

*Noah* addressed the "novel question" "whether an online chat room is a 'place of public

accommodation' under Title II" of the Civil Rights Act of 1964.  *Id.* at 534.  The district court

held that "plaintiff's claim fails because a chat room is not a 'place of public accommodation' as

defined by Title II, 42 U.S.C. § 2000a(b)."  *Id.* at 537; *see also id.* at 540.  Although the plaintiff

in *Noah* argued that the chat rooms are "place[s] of . . . entertainment" and, thus, within the

definition of "place of public accommodation," *id.* at 541, the district court held that "the

relevant case law[18] and an examination of the statute's exhaustive definition make clear, 'places

of public accommodation' are limited to actual, physical places and structures, and thus cannot

include chat rooms, which are not actual physical facilities but instead are virtual forums for

communication provided by AOL to its members."  *Id.* at 541.  The court stated:

> "Title II's definition of "places of public accommodation" provides a list of
> "establishments" that qualify as such places. This list, without exception, consists of
> actual physical structures; namely any "inn, hotel, motel, ... restaurant, cafeteria,
> lunchroom, lunch counter, soda fountain, ... gasoline station ... motion picture house,
> theater, concert hall, sports arena [or] stadium." 42 U.S.C. § 2000a(b)(1)-(3). In addition,
> § 2000a(b)(4) emphasizes the importance of physical presence by referring to any
> "establishment ... which is *physically located* within" an establishment otherwise
> covered, or "within ... which" an otherwise covered establishment "is *physically located*."
> 42 U.S.C. § 2000a(b)(4) (emphasis added). Thus, in interpreting the catchall phrase
> "other place of exhibition or entertainment" on which plaintiff relies, the statute's
> consistent reference to actual physical structures points convincingly to the conclusion
> that the phrase does not include forums for entertainment that are not physical structures
> or locations."

*Noah*, 261 F. Supp. 2d at 541 (citing 42 U.S.C. § 2000a(b)(3)).

---

[18] The "relevant case law" analyzed by the *Noah* court rejected Title II claims against
membership organizations.  261 F. Supp. 2d at 542.  "In short, it is clear from the cases
considering membership organizations that status as a place of public accommodation under
Title II requires ***some connection*** to some specific physical facility or structure."  *Id.* (emphasis
added).

Significantly, in responding to the plaintiff's attempt to apply the case law interpreting the "place of public accommodation" provision under Title III of the ADA, the district court expressly recognized "the ADA's broader definition" of such term. *Id.* at 544 (referencing "the broader ADA definition of public accommodation"); *see also id.* at 543 n.9.   In particular, the district court noted that "the First Circuit has held that 'places of public accommodation' under Title III of the ADA are *not* limited to actual physical facilities."   *Id.* at 543 (emphasis in original) (citing *Carparts*, 37 F.3d at 18-20).   Notably, the district court sought to distinguish *Carparts* as follows:

> "In reaching this conclusion, the First Circuit in *Carparts* relied on **the ADA's more expansive definition of "place of public accommodation," in particular its inclusion of a "travel service," "insurance office," and "other service establishments" as places of public accommodation** *Id*. at 19; 42 U.S.C. § 12181(7). Focusing on these terms, the First Circuit concluded that "Congress clearly contemplated that 'service establishments' include providers of services which do not require a person to physically enter an actual physical structure," and thus that the Title III of the ADA is not limited to "physical structures which person must enter to obtain goods and services." *Id.* at 19–20. Simply put, the *Carparts* court found it irrational to conclude that Title III of the ADA reaches those who enter an office to purchase insurance services, but not those who purchase them over the mail or by telephone. *Id.* at 19. **Notably, Title II of the Civil Rights Act does not include a "travel service," "insurance office," or "other service establishments" in its definition**, making the relevance of *Carparts* and its progeny to Title II questionable, at best."

*Noah*, 261 F. Supp. 2d at 543 n.9 (emphasis added).   Thus, *Noah* expressly recognized that the definition of "place of public accommodation" in the specific context of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(b), which was never amended, *is on its face far more limited than the much broader definition used in Title III of the ADA*, 42 U.S.C. § 12181(7), which was enacted 26 years later.   Thus, if anything, *Noah* actually supports Plaintiff's position.

Moreover, *Noah* failed to address the actual question before this Court:  the applicability of Title III of the ADA to commercial websites.   As mentioned above, it is black letter law that cases are not precedents for propositions that are not considered.  *Webster*, 266 U.S. at 511.

18

Finally, *Noah*, which was decided 15 years ago, predates the *vast* majority of case law specifically related to commercial website accessibility under the ADA (and is non-binding upon this court).  For example, although *Noah* characterized *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (noting that a "place of public accommodation" encompasses facilities open to the public in both physical and electronic space, including websites), as "dicta," 261 F. Supp. 2d at 544 n.11, *Noah* ignored the Seventh Circuit's explicit reliance on *Doe* in *Morgan*, 268 F.3d 459 ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or hotel but we have already rejected that interpretation.").  *Noah* also did not have the opportunity to consider subsequent district court decisions.[19]

> **g.    *Carroll v. Northwest Federal Credit Union* Is Unpersuasive.**

Defendant's reliance on *Carroll v. Northwest Federal Credit Union*, 2018 WL 2933407 (E.D. Va. Jan. 26, 2018), *appeal docketed*, No. 18-1434 (4th Cir. Apr. 19, 2018) (Ex. 18), which is currently on appeal to the Fourth Circuit, is misplaced.  *Northwest* relied heavily upon *Noah*

---

[19] *See, e.g.*, *Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902, at *7-*9 (S.D.N.Y. Dec. 20, 2017) (Ex. 17) (citing *Carparts* and its analysis of the "travel service" term within 42 U.S.C. § 12181(7)(F)); *id.* at *10 ("For these reasons, the Court holds that the term 'public accommodation' in Title III extends to private commercial websites that affect interstate commerce.  This construction, although not dictated by the ADA's text, is consistent with it; and it is compellingly supported by the ADA's purposes, legislative history, and context.  By applying the ADA to today's ubiquitous world of ecommerce, this construction vindicates Congress's intent that the ADA remedy discrimination against the disabled in 'all aspects of society.'"); *Markett*, 2017 WL 5054568, at *2 ("the text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggest that defendant's website is covered under the ADA . . . as its own place of public accommodation"); *Scribd*, 97 F. Supp. 3d at 566-76 (denying a motion to dismiss an ADA claim brought against the operator of a commercial website that did not operate any physical location open to the public); *Gil*, 242 F. Supp. 3d at 1318 ("Courts in the First, Second, and Seventh Circuits have found that the ADA can apply to a website independent of any connection between the website and a physical place."); *Netflix, Inc.*, 869 F. Supp. 2d at 200 (denying motion for judgment on the pleadings and holding a website constituted a place of public accommodation).

without addressing any of the foregoing frailties of *Noah*.   Thus, the order in *Northwest* is equally unpersuasive.

### 6.   Defendant's Position Conflicts with the DOJ's Position.

Defendant omits to mention that its position conflicts with the DOJ's position.   As explained by the DOJ, "While some courts in other circuits have held that title III does not apply to web-only services, this conclusion does not comport with the First Circuit's ruling in *Carparts*, the ADA's legislative history, ***or the Department of Justice's interpretation of title III***."   (RJN Ex. 1 at 6 n.4) (emphasis added).   It is well-established that the views of the DOJ regarding the ADA are entitled to deference.   *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 876 (9th Cir. 2004); *Magee*, 833 F.3d at 535 n.34.   Even the DOJ's statements of interest are entitled to deference.   *M.R. v. Dreyfus*, 697 F.3d 706, 735 (9th Cir. 2012) (DOJ's Statement of Interest in an ADA case is entitled to deference and "respect").

### 7.   The Court Should Adopt the Interpretation of the First, Second, and Seventh Circuits, Which Do Not Impose a "Nexus" Theory.

Plaintiff submits that this Court should interpret the ADA consistent with the interpretation of the First, Second, and Seventh Circuits, which clearly do not apply any "nexus" theory.   *Andrews*, 268 F. Supp. 3d at 397.   Indeed, the holding in *Andrews* expressly rejected the *Target* decision dating back over a decade ago as too narrow.   *Id.* at 397 ("The *Target* litigation lays bare the unworkability of the requirement that a website is only subject to the ADA if its use involves a connection to a physical store."); *id.* ("A rigid adherence to a physical nexus requirement leaves potholes of discrimination in what would otherwise be a smooth road to integration.").   In other words, the *Andrews* decision held that a "nexus" test does not apply.

**8.    Even If This Court Imposes a "Nexus" Requirement Between Defendant's Website and Its Physical Facility, the Complaint Pleads a Sufficient Connection.**

Assuming *arguendo* that the Court decides to impose a so-called "nexus" theory as does the Ninth Circuit, the FAC sufficiently pleads such connection.   (FAC ¶ 6.)   If the Court disagrees, leave to amend should be granted.

In *Gil v. Winn-Dixie Stores, Inc.*, *supra*, the district court held that the plaintiff had sufficiently pled a "nexus" between the commercial website of the defendant and its physical stores.  In particular, the court held that the plaintiff alleged that the defendant's website ***allows customers to locate physical store locations***.  242 F. Supp. 3d at 1321.  In reciting the other relevant allegations of the complaint, the court also noted the allegations that such website "allows consumers to" "learn about Winn-Dixie brand items, access home-cooking recipes, and receive information about product recalls."  *Id.* at 1316.  In other words, the website allegedly provided ***information*** that operated as a gateway to physical store locations.

At minimum, the information alleged in paragraph 6 of the FAC is surely disseminated online in order to limit the disruption that non-members would have on Defendant's business operations at its physical locations by having to answer time-consuming questions from non-members.  Thus, Defendant's website has a strong link to its physical location.  At minimum, the FAC alleges "some connection."[20]  *Weyer*, 198 F.3d at 1114.

**C.    Defendant's Due Process Argument Is Without Merit.**

Defendant argues that "[n]either the statutory text of the ADA nor its implementing regulations contain any standards governing website access."  (Mtn. Dism. at 10-11.)  Defendant

---

[20] Although Defendant argues that a website barrier must impair physical access to a physical place of public accommodation, (Mtn. Dism. at 8-9), the *Target* decision rejects such position as inconsistent with the plain meaning of the ADA.  *Target*, 452 F. Supp. 2d at 953-54.

contends that Plaintiff's action violates Defendant's right to due process.  (Mtn. Dism. at 12-14.)

Defendant ignores that the existing ADA statutes cover commercial websites either via its

general non-discrimination provision (42 U.S.C. § 12182(a)), its reasonable modifications in

policies, practices, or procedures provision, (42 U.S.C. § 12182(b)(2)(A)(ii)), or via its auxiliary

aid provision (42 U.S.C. § 12182(b)(2)(A)(iii)).   It also ignores unambiguous regulations

promulgated by the DOJ either decades ago when it issued its original ADA implementing

regulations on July 26, 1991 (effective January 26, 1992),[21] *see* 28 C.F.R. §§ 36.201(a),

36.303(a) & (c)(1),[22] or at least since September 15, 2010, which is when the term "screen reader

software" was added to the existing regulation at 28 C.F.R. § 36.303(b)(2),[23] and when the

"privacy and independence" requirements were added via 28 C.F.R. § 36.303(c)(1)(ii).[24]  Thus,

statutory and regulatory notice to website owners and operators that their websites needed to

comply with the ADA's "full and equal" enjoyment requirement has been plain for many years.

In addition, the DOJ has repeatedly announced to the public that the existing version of

Title III of the ADA applies to commercial websites.[25]   It is well-established that the DOJ's

---

[21] 56 Fed. Reg. 35544-01, 35555, 35565-35566, 1991 WL 304374 (July 26, 1991) (Ex. 12).

[22] A plaintiff's entitlement is to receive auxiliary aids and services that provide "effective communication" under 28 C.F.R. § 36.303(c)(1).

[23] The list of examples in 28 C.F.R. § 36.303(b) was never intended to be exhaustive.  Indeed, in promulgating its implementing regulations on July 26, 1991, the DOJ clarified that its list "is not an all-inclusive or exhaustive catalogue of possible or available auxiliary aids or services."  56 Fed. Reg. at 35566.  "It is not possible to provide an exhaustive list, and such an attempt would omit new devices that will become available with emerging technology."  *Id.*

[24] 28 C.F.R. § 36.303(c)(1)(ii) states that the auxiliary aids and services must be provided "in such a way as to protect the privacy and independence of the individual with a disability."  28 C.F.R. § 36.303(c)(1)(ii).

[25] The DOJ has consistently "taken the position that the ADA applies to the Internet and web-based goods and services providers."  *Scribd*, 97 F. Supp. 3d at 574 (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996)) (Ex. 19) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet."); *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites:*

22

views of the ADA statutes are entitled to deference.  *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 876 (9th Cir. 2004).  Similarly, the DOJ's interpretation of its own implementing regulations regarding the ADA are also entitled to deference.  *See Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2888 (2015); *id.* at 1104 ("an agency's interpretation of its own regulations as advanced in an amicus brief is also entitled to deference.").  The DOJ's statements of interest and amicus filings are entitled to deference too.  *M.R. v. Dreyfus*, 697 F.3d 706, 735 (9th Cir. 2012) (DOJ's Statement of Interest in an ADA case is entitled to deference and "respect"); *Magee*, 533 F.3d at 535 n.34.  Thus, this Court can and should give deference to the DOJ's longstanding position that Title III applies to commercial websites.

Although Defendant cites to the DOJ's 2010 Advance Notice of Public Rulemaking ("ANPRM"), 75 Fed. Reg. 43460 (July 26, 2010) (Ex. 22), and its withdrawal as significant,[26] (Mtn. Dism. at 11-12), Defendant ignores that the DOJ sought via the ANPRM to make an "interpretive rule" and not a "legislative rule."  *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1032-33 (9th Cir. 2008) (holding that the DOJ's change in its interpretation of a certain ADAAG section *did not require notice and comment for formal rule-making* because the DOJ's

---

*Hearing Before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess., 065-010, at 8 (2000) (statement of Hon. Charles Canaday, Chairman, H. Comm. S. Comm. on the Constitution)) (Ex. 20) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); News Release (testimony of Principal Deputy Assistant Attorney General for Civil Rights, Samuel R. Bagenstos, before the House Subcommittee on Constitution, Civil Rights and Civil Liberties), 2010 WL 1634981 (Apr. 22, 2010) (Ex. 21); RJN Exs. 1-5.

[26] The DOJ has very recently entered into a Settlement Agreement with the City and County of Denver, Colorado under Title II of the ADA, which requires Denver's website to comply with the ADA and, at minimum, WCAG 2.0 Level A and Level AA Success Criteria.  RJN Ex. 6. The DOJ signed such Settlement Agreement as of January 8, 2018.  This confirms that the DOJ continues to rely upon WCAG 2.0 AA Success Criteria as providing an appropriate measure to test a website for ADA compliance and accessibility.

announcement of its change was an "interpretive rule," which is one "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers").[27] The DOJ's various public pronouncements about website accessibility via its Statements of Interest, amicus briefs, and other public statements constitute "interpretive rules". As explained by the Ninth Circuit, "an *imprecise* but comprehensible normative standard" does not render a statute as vague for purposes of due process. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (emphasis added). "A statute is vague not when it prohibits conduct according 'to an *imprecise* but comprehensible normative standard, but rather in the sense that *no standard of conduct is specified at all*.'" *Id.* (emphasis added). "Because the ADA is a statute that regulates commercial conduct, it is reviewed *under a less stringent standard of specificity*." *Id.* (emphasis added). And, the Ninth Circuit has held that "*the lack of specific regulations cannot eliminate a statutory obligation*." *Fortyune*, 766 F.3d at 1102 (emphasis added) (rejecting a defendant's due process argument that the defendant lacked notice that the ADA's general mandate to eliminate discrimination against disabled persons applied even absent technical specifications); *id.* at 1100-06 (holding that the plaintiff stated claims under the ADA based on the City's alleged failure to provide accessible on-street diagonal stall parking irrespective of whether the DOJ has adopted technical specifications for on-street parking).

Indeed, if the DOJ agreed with Defendant's due process argument, then why has the DOJ itself actively enforced Title III of the ADA against commercial websites? *See, e.g.*, *National Fed. of the Blind, et al. v. HRB Digital LLC, et al.*, No. 1:13-cv-10799-GAO [ECF #60 at pg. 5]

---

[27] "[I]nterpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule,' whereas legislative rules 'create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress.'" *Id.* An interpretive rule clarifies the agency's view of ambiguous terms. "A rule does not become a legislative rule because it effects some unanticipated change; otherwise, only superfluous rules could qualify as interpretive rules." *Id.*

(D. Mass. Mar. 24, 2014) (Ex. 23) (consent decree).

### 1. The Case Authority Cited By Defendant Is Distinguishable or Unpersuasive.

Defendant relies upon unpublished district court decision, *Robles v. Dominos Pizza, LLC*, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017), *appeal docketed*, No. 17-55504 (9th Cir. Apr. 13, 2017) (Ex. 24), which is currently on appeal.[28]  Such reliance is misplaced.  Besides the fact that its due process analysis is dicta because the decision dismissed the action ***without prejudice*** based upon the primary jurisdiction doctrine, *id.* at *8, *Robles* has been repeatedly rejected by multiple federal court decisions for its due process analysis in similar ADA website barrier cases.[29]  As one court explained in addressing the difference between liability and remedy, "the Complaint seeks to enforce the ADA's statutory requirements, rather than the Web Content Accessibility Guidelines."  *Gathers v. 1-800-Flowers.com, Inc.*, 2018 WL 839381, at *3 (D. Mass. Feb. 12, 2018) (Ex. 31).  That distinction applies here.

## V. CONCLUSION

For the reasons set forth herein, it is respectfully requested that the Court deny Defendant's motion to dismiss the Complaint and grant such further and other relief as it deems appropriate.[30]

---

[28] Defendant neglects to mention that *Robles* is currently on appeal to the Ninth Circuit.

[29] *See, e.g., Castillo*, 286 F. Supp. 3d at 881-82; *Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, 2018 WL 566781, at *5 (C.D. Cal. Jan. 24, 2018) (Ex. 25); *Rios v. New York & Co., Inc.*, 2017 WL 5564530, at *6 (C.D. Cal. Nov. 16, 2017) (Ex. 26) ("the lack of specific guidelines from the DOJ does not excuse Defendant from its obligation to comply with the general mandates of the ADA"); *Access Now, Inc. v. Blue Apron, LLC*, 2017 WL 5186354, at *9 n.20 (D.N.H. Nov. 8, 2017) (Ex. 27); *Gorecki v. Dave & Buster's, Inc.*, 2017 WL 6371367, at *3-*4 (C.D. Cal. Oct. 10, 2017) (Ex. 28); *Reed v. CVS Pharmacy, Inc.*, 2017 WL 4457508, at *4-*6 (C.D. Cal. Oct. 3, 2017) (Ex. 29); *Andrews*, 268 F. Supp. 3d at 403-04; *Gorecki v. Hobby Lobby Stores, Inc.*, 2017 WL 2957736, at *4 n.3, *5-*6 (C.D. Cal. June 15, 2017) (Ex. 30); *see also Del-Orden*, 2017 WL 6547902, at *14.

[30] Plaintiff should be granted leave to cure any curable pleading deficiency.

Respectfully submitted,

 /s/Scott J. Ferrell_____

Scott J. Ferrell, Esq.
Attorney-in-charge
State Bar No. 00796540
Southern District of Texas Bar No. 00796540
Pacific Trial Attorneys
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Phone: (949) 706-6464
Fax: (949) 706-6469
sferrell@pacifictrialattorneys.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August 2018, I electronically filed the foregoing using the Court's CM/ECF filing system, which will then send a notification of electronic filing (NEF) to all parties registered to receive electronic notice.

/s/Scott J. Ferrell