IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMER ZAID, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1130 |
| | § | |
| SMART FINANCIAL CREDIT UNION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tamer Zaid ("Zaid" or "Plaintiff") sued Defendant Smart Financial Credit Union ("SFCU" or "Defendant") seeking injunctive relief under the Americans with Disabilities Act ("ADA"). Pending before the court is Smart Financial Credit Union's Amended Motion to Dismiss ("SFCU's Motion to Dismiss") (Docket Entry No. 19). For the reasons stated below, SFCU's Motion to Dismiss will be granted.

I. **Factual Background**

This action arises from alleged difficulties Plaintiff encountered when attempting to access Defendant's website. Plaintiff is a permanently blind man who qualifies as an individual with a disability under the ADA.[1]  See 42 U.S.C. § 12102(2) (defining persons with a "disability" as including persons whose

---

[1] See Plaintiff's First Amended Complaint, Docket Entry No. 12, p. 2. [All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.]

ability to see is substantially limited). SFCU is a member-owned and federally-insured credit union that offers membership to: (1) people who live, work, or attend school in Brazoria, Fort Bend, Harris, or Montgomery Counties, Texas; (2) businesses located in Brazoria, Harris, or Montgomery Counties, Texas; and (3) people who work in the medical industry in Chambers, Galveston, Jefferson, and Orange Counties, Texas.[2] While Plaintiff is not currently a member of SFCU, he alleges that he is eligible for membership as a resident of Harris County, Texas.[3]

Plaintiff is what is commonly referred to as an ADA "tester," meaning that he tests the ADA compliance of various businesses and files lawsuits against those that have failed to comply with the ADA's accessibility requirements.[4] Plaintiff has filed several lawsuits against other credit unions alleging that their websites are inaccessible to visually impaired persons.[5]

---

[2] See SFCU's Motion to Dismiss, Docket Entry No. 19, p. 8; Screenshot from https://www.smartcu.org, Exhibit A to SFCU's Motion to Dismiss, Docket Entry No. 19-1.

[3] See Plaintiff's First Amended Complaint, Docket Entry No. 12, p. 2 ("Plaintiff is a resident of the portion of the city of Friendswood, Texas, which is located in Harris County, Texas." Friendswood is located in both Galveston and Harris Counties, Texas.).

[4] See Brief of National Association of Federally-Insured Credit Unions (NAFCU) as Amicus Curiae Supporting Defendant Smart Financial Credit Union's Motion to Dismiss the Complaint, ("NAFCU's Amicus Brief"), Docket Entry No. 14, pp. 6-7; Plaintiff's Response Memorandum in Opposition to Defendant's Amended Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 22, pp. 11-12.

[5] See NAFCU's Amicus Brief, Docket Entry No. 14, pp. 6-7.

Plaintiff uses a screen reader to access websites.⁶ Screen readers vocalize visual information on a computer screen and provide a method for blind persons to independently access the internet. Plaintiff alleges that he was unable to use and navigate SFCU's website because SFCU failed to design a website compatible with screen readers.⁷ Plaintiff alleges that SFCU's failure to provide a compatible website has denied him equal access to the information and tools provided by SFCU to its members and prospective members online, including information about SFCU's locations and services. Plaintiff seeks injunctive relief against SFCU that would require SFCU to ensure the accessibility of its website to the visually impaired.⁸

SFCU argues in its Motion to Dismiss that this action should be dismissed for two reasons. First, SFCU argues that the court lacks subject matter jurisdiction because Plaintiff does not have standing to pursue this action. Second, SFCU argues that Plaintiff has failed to state a claim upon which relief can be granted because SFCU's website is not a "place of public accommodation"

---

⁶See Plaintiff's First Amended Complaint, Docket Entry No. 12, pp. 2-3.

⁷Plaintiff alleges that the barriers to access on SFCU's website include, but are not limited to: (1) missing alternative text, which allows screen readers to be able to vocalize visual images; (2) redundant links; and (3) redundant title text. See Plaintiff's First Amended Complaint, Docket Entry No. 12, pp. 7-8.

⁸See Plaintiff's First Amended Complaint, Docket Entry No. 12, pp. 11-13.

under the ADA and therefore is not subject to the ADA's accessibility requirements.

## II. <u>Standing</u>

SFCU seeks dismissal under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. See <u>Ramming v. United States</u>, 281 F.3d 158, 151 (5th Cir. 2001), <u>cert. denied sub nom.</u>, <u>Cloud v. United States</u>, 122 S. Ct. 2665 (2002) (citing <u>Hitt v. City of Pasadena</u>, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam) ("Dismissal . . . for failure to state a claim is a decision on the merits . . . whereas a dismissal on jurisdictional grounds alone is not on the merits . . .")). The court will therefore address SFCU's challenge to Plaintiff's standing first.

### A. Standard of Review and Applicable Law

"Federal courts are courts of limited jurisdiction." <u>Kokkonen v. Guardian Life Insurance Company of America</u>, 114 S. Ct. 1673, 1675 (1994). The burden of establishing federal jurisdiction rests with the party asserting jurisdiction. <u>DaimlerChrysler Corp. v. Cuno</u>, 126 S. Ct. 1854, 1861 n.3 (2006). A party may assert the defense of lack of subject matter jurisdiction in a Rule 12(b)(1)

motion. Fed R. Civ. P. 12(b)(1). "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998). The court may determine whether it possesses subject matter jurisdiction over an action by looking to "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrett Computer Services, Inc. v. PDA, Inc., 884 F.2d 214, 220 (5th Cir. 1989).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted). One element of the case-or-controversy requirement is that a plaintiff must establish, on the basis of the complaint, standing to sue. Raines v. Byrd, 117 S. Ct. 2312, 2317 (1997) (citing Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136-37 (1992)). To have standing, "[a] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547 (citing Lujan, 112 S. Ct. at 2136). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege

facts demonstrating' each element." Id. (citing Warth v. Seldin, 95 S. Ct. 2197, 2215 (1975)). "[W]hen considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim."[9] North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare, 781 F.3d 182, 191 (5th Cir. 2015) (quoting Cole v. General Motors Corp., 484 F.3d 717, 723 (5th Cir. 2007)).

The fact that a plaintiff is a "tester" does not negate the fact that the plaintiff may have suffered a legally cognizable injury. See Havens Realty Corp. v. Coleman, 102 S. Ct. 1114, 1121 (1982) ("A tester who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the [statute]'s provisions."); see also Gilkerson v. Chasewood Bank, 1 F. Supp. 3d 570, 595-96 (S.D. Tex. 2014) (holding that an ADA tester who went to a public accommodation as both a tester and a patron and planned to return to such accommodation had standing under the ADA).

At issue in this case is the "injury in fact" requirement for standing. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

---

[9]The merits here include the question of whether a website can constitute a "place of public accommodation" under the ADA, and whether Plaintiff can state a claim for injunctive relief under the ADA based on the alleged inaccessibility of SFCU's website.

conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (citing Lujan, 112 S. Ct. at 2130). The ADA affords injunctive relief to disabled persons who are denied opportunities provided by an entity because of their disabilities. 42 U.S.C. § 12188(a). To have standing to seek injunctive relief, a plaintiff must demonstrate a real, immediate threat of repeated injury: "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" City of Los Angeles v. Lyons, 103 S. Ct. 1660, 1665 (1983); see also Plumley v. Landmark Chevrolet, Inc., 122 F.3d 308, 312 (5th Cir. 1997) (stating that for a plaintiff to have standing to sue for injunctive relief he "must face a threat of present or future harm"). Where a public accommodation's non-compliance is ongoing, the disabled plaintiff "suffers an ongoing injury so long as she is effectively denied the opportunity to participate in or benefit from the services and facilities of the entity." Gilkerson, 1 F. Supp. 3d at 595 (internal quotations omitted).

Courts in the Fifth Circuit have articulated two different tests ADA plaintiffs can use to demonstrate a threat of future injury. First, an ADA plaintiff can show that the inaccessibility of a place of public accommodation "actually affects his activities in some concrete way." Frame v. City of Arlington, 657 F.3d 215, 236 (5th Cir. 2011). Second, a plaintiff can show that the plaintiff intends to return to the out-of-compliance public

accommodation. See Plumley, 122 F.3d at 312 (requiring that a plaintiff show that the out-of-compliance public accommodation poses a risk of present or future harm to the plaintiff); see also Gilkerson, 1 F. Supp. 3d at 582 (S.D. Tex. 2014) ("[The plaintiff] must plead facts demonstrating that she intends, and is likely, to return to [the out-of-compliance public accommodation] by pointing to such factors as its proximity to her home, her past patronage, the frequency of her travel near that [public accommodation], and her concrete plans to do so and when.").

## B. Plaintiff's Standing

SFCU argues that Plaintiff lacks standing to pursue this action because he has failed to allege an injury in fact. SFCU argues that Plaintiff has failed to show that he either intends to return to SFCU's allegedly out-of-compliance website or that SFCU's website's alleged failure to comply with the ADA affects Plaintiff's daily activities in a concrete way. In evaluating whether Plaintiff has standing to pursue this action, the court will assume that Plaintiff's ADA claim has legal merit.

Plaintiff is not currently an SFCU member, but Plaintiff's First Amended Complaint clarifies that Plaintiff is a resident of Harris County, Texas, and is therefore eligible to join SFCU.[10] The NAFCU filed an amicus brief arguing that Plaintiff lacks standing

---

[10]See Plaintiff's First Amended Complaint, Docket Entry No. 12, p. 2; Plaintiff's Response, Docket Entry No. 22, p. 11.

because he is not a member of SFCU. SFCU's website is aimed at providing services and information not only to SFCU's members, but also to prospective members.[11] Plaintiff alleges that he was and continues to be unable to access information about becoming a member because SFCU's website is inaccessible.

Because Plaintiff seeks injunctive relief under the ADA, he must show that there is a real, immediate threat of present or future injury posed by SFCU's website's continued non-compliance. Plaintiff requires use of a screen reader to access the internet. For Plaintiff to have full and equal access to SFCU's website, the website must be compatible with screen readers. SFCU does not deny that its website is incompatible with screen readers, making it difficult if not impossible for Plaintiff to utilize SFCU's online resources. Plaintiff alleges that he made "several attempts" to access and navigate SFCU's website in the past.[12] Plaintiff also contends that he would use the website in the future to look into SFCU's services if SFCU were to modify its website to make it compatible with screen readers.[13]

The court concludes that Plaintiff has demonstrated that he is injured by the inaccessibility of SFCU's website because he continues to be deterred from accessing SFCU's online resources.

---

[11]See, e.g., Smart Financial Credit Union's "I Want to Become a Member" Page, https://www.smartcu.org/i-want-to/become-a-member.

[12]See Plaintiff's First Amended Complaint, Docket Entry No. 12, p. 2.

[13]See id. at pp. 6-8.

Plaintiff has not merely asserted a bare violation of the ADA; he has alleged that SFCU's website's non-compliance with the ADA continues to affect him in a concrete and personal way. Plaintiff need not continually attempt to access SFCU's website to satisfy the continuing injury requirement for injunctive relief under the ADA. See Frame, 657 F.3d at 236 ("[A] disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that an [out-of-compliance public accommodation] actually affects his activities in some concrete way."). Plaintiff's past attempts to access SFCU's website, coupled with SFCU's website's continued inaccessibility and Plaintiff's plan to use SFCU's website in the future once it is accessible, are sufficient to satisfy the injury-in-fact requirement. The court therefore concludes that Plaintiff has standing to pursue this action.

### III. Applicability of the ADA to Websites

Plaintiff argues that he is entitled to injunctive and declaratory relief under the ADA because SFCU's website is subject to the ADA's accessibility requirements. SFCU argues that while its brick-and-mortar locations are subject to the ADA's accessibility requirements, its website is not.

A. Standard of Review

The Federal Rules of Civil Procedure permit dismissal when a plaintiff fails to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming, 281 F.3d at 161. To defeat a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. In ruling on a Rule 12(b)(6) motion, the court must "accept the plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff." Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007).

B.  **Applicable Law**

Title III of the ADA states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The statute does not define "place of public accommodation," but it does define "public accommodation." "[P]rivate entities are considered public accommodations . . . if the operations of such entities affect commerce" and fall into one of twelve enumerated categories:

> (A) an inn, hotel, motel, or other place of lodging . . .;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

Id. § 12181(7)(A)-(L). The Department of Justice's regulations define "place of public accommodation" to mean "a facility operated by a private entity whose operations affect commerce and fall within at least one" of twelve enumerated categories that are substantially the same as those contained in 42 U.S.C. § 12181(7). See 28 C.F.R. § 36.104.

Every type of public accommodation listed in § 12181(7) "is a physical place open to public access . . . where goods or services

are open to the public, and places where the public gets those goods or services." Magee v. Coca-Cola Refreshments USA, Incorporated, 833 F.3d 530, 534 (5th Cir. 2016) (internal quotations omitted). The legislative history of § 12181(7) indicates that the list of places of public accommodation contained in the statute was intended to be "exhaustive," but liberally construed. H.R. Rep. 101-485 (II), 100, 1990 U.S.C.C.A.N. 303, 383; see also Magee, 833 F.3d at 535-36. For example, Congress instructed that although different types of stores (such as pet stores and bookstores) are not expressly mentioned in the statute, other stores offering merchandise for sale fall within the scope of the term "retail establishment" as it is used in the statute. H.R. Rep. 101-485 (II), 100, 1990 U.S.C.C.A.N. 303, 383; see also Magee, 833 F.3d at 536.

The plaintiff in Magee argued that vending machines qualified as "other sales or rental establishments" under § 12181(7)(E). Id. at 534-35. In determining that they were not, the court invoked the principle of ejusdem generis: "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Magee, 833 F.3d at 534 (internal quotations omitted). The court concluded that vending machines are not akin to the categories of places of public accommodation listed in § 12181(7), even when the statute is construed liberally. Id. at 536. The court therefore held that while the "vending machines may very well

be subject to various requirements under the ADA by virtue of their being located in a hospital or bus station, both of which are indisputably places of public accommodation," Coca-Cola was not liable because the vending machines themselves were not places of public accommodation. See id. at 534, 536.

C.  **Applicability of the ADA to SFCU's Website**

Plaintiff does not allege that SFCU's brick-and-mortar locations have failed to comply with the ADA -- Plaintiff's ADA claims are based only on the alleged non-compliance of SFCU's website. Therefore, for Plaintiff to recover under the ADA, SFCU's website must be a "place of public accommodation."

Plaintiff argues that the phrase "other service establishment" as used in § 12181(7)(F) is broad enough to encompass a website. Plaintiff's argument, however, ignores Fifth Circuit precedent requiring that a place of public accommodation be a physical place. Just as the vending machines in Magee were dissimilar from the other public accommodations listed before "other sales or rental establishment" in § 12181(7)(E), a website is different from the places of public accommodation listed before "other service establishment" in § 12181(7)(F). Each of the public accommodations listed in § 12181(7)(F) (and § 12181(7) as a whole) are physical places. See 42 U.S.C. § 12181(7). The phrase "other service establishment" as used in § 12181(7)(F) refers only to other physical locations akin to the places explicitly named in the

statute. SFCU's website does not have a distinct physical place of business. While websites may be affiliated with brick-and-mortar businesses that are places of public accommodation, that does not render the businesses' websites themselves places of public accommodation.

Because a website is not a place of public accommodation under the ADA, SFCU cannot be liable for its website's alleged failure to comply with the ADA. Therefore, SFCU's Motion to Dismiss will be granted.

## IV. Conclusion and Order

While Plaintiff has standing to proceed with this action, Plaintiff has failed to state a claim for which relief can be granted under the ADA. For the reasons explained above, Smart Financial Credit Union's Amended Motion to Dismiss (Docket Entry No. 19) is **GRANTED**. Plaintiff's Motion for Reconsideration of Order Granting Defendant's Unopposed Motion to Postpone Initial Scheduling Conference and Due Date of Joint Case Management and Discovery Plan (Docket Entry No. 17) is **DENIED** as moot.

**SIGNED** at Houston, Texas, on this 24th day of January, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE